[Crim. No. 8975. First Dist., Div. Two. June 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH RUSSELL ANGLIN, Defendant and Appellant.

**COUNSEL**

William R. Higham, Public Defender, and Robert G. McGrath, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—A jury found appellant guilty of having received stolen property in violation of section 496 of the Penal Code. Execution of judgment was suspended and appellant was admitted to probation. He appeals from the order of probation.

On the afternoon of December 8, 1969, appellant was arrested at his apartment for disturbing the peace. At the time of his arrest, appellant had been on parole from the California Youth Authority two and one-half years, and was living alone in an apartment for which the Youth Authority was paying the rent. As a result of the arrest, appellant's parole officer placed a "parole hold" on him.

On the day after appellant's arrest and while he was held in custody, the parole officer went to appellant's apartment for the purpose of removing some of appellant's valuable personal property for safekeeping. The parole officer knew, based on complaints and conversations with appellant's landlord, that appellant was going to be evicted from the apartment because of disturbances caused by appellant and a number of his friends who were frequently there. The parole officer was let into the apartment by the manager.

In the course of collecting appellant's personal property, the parole officer looked into a closet in a hallway and saw some fishing gear, four or five fishing rods and reels, and other items. Because he was not aware that appellant went fishing, the parole officer telephoned appellant's mother to determine whether her son owned any fishing equipment. On being told that she was not aware that he had such equipment, the parole officer telephoned the Concord Police Department to ascertain whether any fishing equipment had been reported stolen. Later that day, the parole officer went to the police station and talked to an officer who had been assigned that morning to investigate a reported burglary and theft of fishing equipment from the garage of a local resident. The parole officer asked the police

officer to accompany him to appellant's apartment to examine the fishing equipment found there. They were let into the apartment by the manager. On further investigation, four fishing rods and reels were identified by the owner and his son as those taken from their garage. Appellant was then charged with receiving stolen property.

Appellant's first contention is that his parole officer could not lawfully enter appellant's apartment without either consent or a search warrant because appellant had never been sentenced to state prison.

Although parolees are protected against unreasonable search and seizure (*In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 5 [83 Cal.Rptr. 382, 463 P.2d 734]), a parole officer may enter and search a parolee's residence even if the information relied on by the parole officer does not reach the level of probable cause generally required under the Fourth Amendment (*In re Martinez, supra,* p. 647, fn. 6; *People* v. *Thompson* (1967) 252 Cal.App.2d 76, 84-86 [60 Cal.Rptr. 203], cert. den. 392 U.S. 930 [20 L.Ed.2d 1388, 88 S.Ct. 2276]; *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 149-150 [40 Cal.Rptr. 100], cert. den. 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; *People* v. *Denne* (1956) 141 Cal. App.2d 499, 506-509 [297 P.2d 451]). Briefly summarized, the rationale is that a parolee is at all times in *custodia legis*. Although he is not a prison inmate in the physical sense, he is serving the remainder of his term outside rather than within the prison walls. Accordingly, so far as necessary for the maintenance of parole guardianship, the status of a parolee as a prisoner is no different than that of one who remains in confinement, and, therefore, for the purpose of maintaining the restraints and social safeguards accompanying such status, the correctional authorities who supervise the parolee may subject him, his home and his effects to such constant or occasional inspection as may seem advisable to them (*People* v. *Thompson, supra*).

Appellant nevertheless argues that while the foregoing rules permit a parole officer to enter and search, without probable cause, the residence of a person paroled from state prison by the Adult Authority, they do not apply to persons on parole from the California Youth Authority. Relying on *People* v. *Hernandez, supra,* and decisions following *Hernandez,* appellant argues that the rule concerning searches by parole officers is based on the fact that under Penal Code section 2600, persons sentenced to the state prison lose their civil rights,[1] and since juveniles committed to the

---

[1]Penal Code section 2600 provides: "A sentence of imprisonment in a state prison for any term less than life suspends all the civil rights of the person so sentenced, . . . But the Adult Authority may restore. . . ."

Youth Authority are not sentenced to prison, they cannot be treated as parolees who have lost their civil rights. Citing *People* v. *Jasso* (1969) 2 Cal.App.3d 955, 963-964 [82 Cal.Rptr. 229], which held that an outpatient from the California Rehabilitation Center is not subject to the general rules applicable to searches by parole officers, appellant argues that parolees from the Youth Authority should, insofar as the right of parole officers to enter their residences is concerned, be treated as probationers or similar to outpatients from the California Rehabilitation Center.

An examination of *People* v. *Hernandez, supra,* and *People* v. *Denne, supra,* and footnote 6 on page 647 of *In re Martinez, supra,* shows that the constitutional limitations imposed on a parolee's privacy are not based, as appellant contends, solely on loss of civil rights under section 2600 of the Penal Code, but are based on broader considerations of effective administration of the parole system. While most, if not all, the cases have involved paroled felons from the state prison by the Adult Authority, the same considerations are generally applicable to juveniles paroled by the Youth Authority. In fact, where a parolee from the Youth Authority is living alone, as appellant was here, the need for close supervision by a parole officer is even more compelling. ■■■ Therefore, we conclude that the parole officer's entry of appellant's apartment without his consent and without a search warrant was necessary, reasonable and lawful.

Appellant also contends that even if his parole officer could lawfully enter his apartment without consent and without a warrant, his parole officer nevertheless exceeded his authority in entering the apartment to protect his personal property after he was arrested and held in custody. The contention is without merit (see *People* v. *Thompson, supra; People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 208 [46 Cal.Rptr. 743]). Appellant had violated his parole. The Youth Authority was paying the rent for appellant's apartment. The parole officer knew appellant was going to be evicted. It is reasonable to infer from the record that the parole officer was highly suspicious and distrustful of appellant's friends who frequented his apartment and who were present at the time of appellant's arrest. Under these circumstances, the parole officer was acting within the scope of his authority as a parole officer in entering the parolee's apartment.

Having established that the entry was lawful, it follows that the seizure of the stolen fishing rods and reels, with the assistance of the police officer, was lawful (see *People* v. *Quilon* (1966) 245 Cal.App.2d 624, 627 [54

Cal.Rptr. 294]) and, therefore, the evidence was admissible on the charge of receiving stolen property.

The order of probation is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1971.