Filed 7/29/21  P. v. Chambers CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059180 |
| v. | (Super. Ct. No. 19HF0785) |
| ERIKA MICHELLE CHAMBERS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Affirmed and remanded for resentencing.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

## INTRODUCTION

Defendant Erika Michelle Chambers rented a car for a prescribed period, and never returned it. After the rental car company reported the car stolen, defendant was seen driving the car and was arrested. Defendant was convicted of unlawfully taking or driving a vehicle, in violation of Vehicle Code section 10851, subdivision (a). On appeal, she challenges her conviction and portions of her sentence.

To the extent the trial court erred in its instructions to the jury, the errors were harmless under the relevant standard. Defendant is correct in arguing that recent amendments to Penal Code section 1203.1 require that her probation term be reduced; we remand to the trial court to make any and all appropriate changes to defendant's probation length and terms and conditions. We therefore vacate defendant's sentence and remand for resentencing, but in all other respects affirm the judgment.

## STATEMENT OF FACTS

### I.

### PROSECUTION EVIDENCE

On February 9, 2019, defendant rented a 2018 Kia Soul from Budget Rent a Car's rental desk at the John Wayne Airport. The rental contract specified that the rental period would be from February 9 to February 16, 2019, for a total cost of $178.50. At the time defendant rented the car, a hold was placed on her credit card for the estimated total charges. Although the rental agent could not remember defendant's transaction, she testified it was her normal practice to verify that the customer still lived at the address listed on the driver's license presented, that the name on the driver's license matched the name shown on the credit card the customer used, and that the phone number obtained from the customer was current.

Defendant's rental was later extended to February 18. The operations manager for Budget testified that customers may not extend a rental through a third party

vendor: they must work through Budget to do so and they would have the option of speaking to someone in customer service or an agent at the counter. When defendant attempted to again extend the rental on February 21, the credit card company declined the charge. Defendant did not return the car on February 18, and did not contact Budget.

Budget's security department sent a demand letter by certified mail to the address on the rental contract; that letter was returned as undeliverable. On March 10, an agent from Budget's security department attempted to contact defendant at her current address. The agent also left phone messages for defendant and her mother on March 12, 14, 16, and 20. Additionally, the agent attempted to contact defendant through the messenger app on her Facebook page.

On March 22, 2019, Budget's security department advised the local operations manager its investigation had been completed. Because 30 days had passed without contact from defendant, the operations manager reported the car as stolen to the Orange County Sheriff's Department. On April 6, 2019, a deputy sheriff stopped the car and arrested defendant, who was driving.

II.

DEFENSE EVIDENCE

Defendant testified on her own behalf that she had rented the car because she was a delivery driver, and the vehicle she previously used was towed when its lease expired. She had originally rented a compact car from Avis through Booking.com, but when she arrived at the airport she was told they did not have the automobile that she had reserved. Someone at the Budget rental desk offered to "give [her] a better deal for . . . a longer period of time, which [she] took."

Defendant initially intended to rent the car for one week, but then realized she would need it for a longer period of time. Defendant first extended the rental to February 18, but when she called Budget to extend it further, she was told that she needed to work with Booking.com, and that if she "kept the car for longer than a month, then it

3

turns into a month-long rental." Defendant then made a reservation on Booking.com for a "Ford Fiesta or similar type vehicle" from February 21 through March 7. Defendant recalled seeing that a hold was placed on her credit card account for that rental on February 21, but she did not receive a notification that the transaction had been declined. Defendant believed that once she had extended the rental to March 7, her rental contract had been converted to a month-to-month lease, for which she only had to pay after she returned the car.

On April 6, 2019, defendant's mother told her she had learned that the car had been reported stolen. Defendant's boyfriend agreed to accompany her to return the car to Budget and get a new rental at a different rental car company. On the way to the airport, defendant was pulled over and arrested.[1] Defendant could not document her reservation for a new car through a different rental car company.

Defendant testified she had never received any kind of communication from anyone regarding the vehicle,[2] to her knowledge no one had ever come to her home to talk to her about the car, and she had received no notice from her credit card company about declined charges until after her arrest. Defendant further testified when she rented the car she was no longer living at the address shown on her driver's license, and no one asked her whether that address was current.

## PROCEDURAL HISTORY

Defendant was charged in an information with unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)) (count 1) and receiving stolen property (Pen. Code,

---

[1] Defendant was stopped and arrested one freeway exit before the airport.

[2] Defendant received an e-mail from a Budget employee on March 26, 2019, informing her the rental car would be reported as stolen unless she returned it. Defendant testified she had not opened that e-mail until long after her arrest.

4

§ 496d, subd. (a)) (count 2).[3]  A jury convicted defendant on count 1; the jury did not return a verdict on count 2, as instructed by the trial court, and that charge was later dismissed.

The trial court placed defendant on probation with terms and conditions for a period of three years, and ordered her to pay restitution, fees, and fines, including a $50 lab fee pursuant to Health and Safety Code section 11372.5.  Defendant timely appealed from the judgment of conviction.

## DISCUSSION

### I.

### ALTHOUGH THE TRIAL COURT ERRED BY FAILING TO PROVIDE A UNANIMITY INSTRUCTION, THE ERROR WAS HARMLESS

Defendant was charged in count 1 with violating Vehicle Code section 10851, subdivision (a), which prohibits the driving or taking of a vehicle without the owner's consent, with the intent to deprive the owner of possession, temporarily or permanently.  Under this statute, the acts of driving and taking "'are separate and distinct.'"  (*People v. Garza* (2005) 35 Cal.4th 866, 876 (*Garza*); see *People v. Barrick* (1982) 33 Cal.3d 115, 135; *People v. Jaramillo* (1976) 16 Cal.3d 752, 759, fn. 6.)

The jury was instructed with CALCRIM No. 1820 as follows:  "The defendant is charged in Count 1 with unlawfully *taking or driving* a vehicle in violation of Vehicle Code Section 10851(a).  To prove that the defendant is guilty of this crime, the People must prove that:  One, the defendant took someone else's vehicle without the owner's consent; two, when the defendant took the vehicle, she intended to temporarily or permanently deprive the owner of possession or ownership of that vehicle; and three,

---

[3]  Initially, defendant was also charged with one count of embezzlement by a debtor of a security agreement (Pen. Code, §§ 487, subd. (a), 504b); that charge was dismissed on the People's motion during trial.

the vehicle was worth more than $950. [¶] Even if you conclude that the owner had allowed the defendant or someone else to take or drive the vehicle before, you may not conclude that the owner consented to the driving or taking on April 6, 2019, based on that previous consent alone. [¶] A taking requires that the vehicle be moved for any distance, no matter how small. A vehicle includes a passenger vehicle." (Italics added.) The trial court did not provide a unanimity instruction.

The Attorney General concedes that the trial court erred by failing to instruct the jury with a unanimity instruction. The Attorney General argues, however, that the error was harmless beyond a reasonable doubt.[4]

The Attorney General argues that, given the facts of the case, there was no possibility that the jury could have concluded that defendant had taken the car without driving it, or that she drove the car without taking it. Therefore, he argues, there was no reason for the jury to distinguish between the acts of taking and driving.

The Attorney General also argues that while the jury might have disagreed as to the date on which the taking occurred, after that date they would necessarily have agreed that any further act of driving was a violation of Vehicle Code section 10851.

In *Garza, supra*, 35 Cal.4th at page 872, the defendant, a former mechanic at a limousine rental company, was found in the driver's seat of a missing limousine, with the engine running. The defendant was charged with violating Vehicle Code section 10851, subdivision (a) and Penal Code section 496, subdivision (a), and no unanimity instruction was given despite the court's instruction to the jury that Vehicle Code section 10851 could be violated in "'several ways.'" (*Garza, supra,* at p. 873.) The trial court also failed to instruct the jury that the defendant could not be convicted of

---

[4]  There remains a split of authority in the courts of appeal as to the proper standard for harmless error review when the trial court fails to instruct the jury on unanimity. (*People v. Vargas* (2001) 91 Cal.App.4th 506, 561-562.) We agree with the Attorney General that this court need not address the split of authority because even under the stricter standard of *Chapman v. California* (1967) 386 U.S. 18, 24, the error here is harmless.

taking the car under Vehicle Code section 10851 *and* receiving stolen property under Penal Code section 496. (*Garza, supra*, at p. 881.)

The California Supreme Court held the instructional error was harmless. "[Vehicle Code] section 10851(a) separately prohibits the acts of driving a vehicle and taking a vehicle. [Citations.] Thus, a defendant who steals a vehicle and then continues to drive it after the theft is complete commits separate and distinct violations of section 10851(a). In [*People v.*] *Strong* [(1994)] 30 Cal.App.4th 366, the Court of Appeal appeared to suggest that a taking is complete when the driving is no longer part of a '"continuous journey away from the *locus* of the theft."' [Citation.] One might also suggest that the taking is complete when the taker reaches a place of temporary safety. [Citation.] Whatever the precise demarcation point may be (an issue we need not decide here), once a person who has stolen a car has passed that point, further driving of the vehicle is a separate violation of section 10851(a) that is properly regarded as a nontheft offense for purposes of the dual conviction prohibition of section 496(a)." (*Garza, supra,* 35 Cal.4th at pp. 880-881.)

The rule of *Garza* applies here and makes clear that any instructional error was harmless beyond a reasonable doubt. Defendant had clearly passed the point at which any potential taking had become an act of driving. Defendant's defense was the same for the acts of taking and driving. The jury rejected that defense for both potential acts violating Vehicle Code section 10851. Therefore, the Attorney General has established beyond a reasonable doubt that defendant would not have obtained a better result in the absence of the instructional error.

## II.

### INSTRUCTION ON CONCURRENCE OF ACT

The jury was instructed with CALCRIM No. 252 as follows: "*The specific intent or mental state required for the crime of Unlawfully Taking a Vehicle* as charged in

7

Count 1 is that the defendant intended to temporarily or permanently deprive the owner of possession or ownership of the vehicle." (Italics added.) Defendant argues that because this instruction was limited to the act of taking, while the prosecutor argued both taking and driving as violating the statute, the instruction lightened the prosecutor's burden of proof by relieving the prosecution of the burden of proving the defendant *drove* the vehicle with the specific intent to deprive the owner of possession. (See *Francis v. Franklin* (1985) 471 U.S. 307, 309 [due process requires that the prosecution in a criminal case "prove every element of a criminal offense beyond a reasonable doubt"].)

If a jury instruction omits or incorrectly describes an element of the offense, on review we consider whether the error was harmless beyond a reasonable doubt. (*Chapman v. California, supra*, 386 U.S. at p. 24; see *Neder v. United States* (1999) 527 U.S. 1, 15 [the omission of an element of the crime from a jury instruction is subject to review under *Chapman*].)[5] Defendant argues that the error in the instruction was prejudicial because there was substantial evidence that she did not act with the intent to deprive Budget of possession of the car.

However, in this case, it is apparent that the jury unanimously concluded that defendant was guilty of unlawfully taking the car, as charged in count 1. The jury was instructed: "If you find the defendant guilty of Unlawfully Taking a Vehicle, you must return the verdict form for guilty of Receiving Stolen Property unsigned." This is, in fact, what happened. "Jurors are presumed able to understand and correlate

---

[5] The Attorney General cites *People v. Young* (2005) 34 Cal.4th 1149, in which the California Supreme Court held that "'[i]f a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.'" (*Id.* at p. 1202.) *People v. Young* did not involve a federal constitutional issue, however. Indeed, one of the cases *People v. Young* cites on the issue of reviewing an instructional error notes that an instruction incorrect under state law is not subject to review on a federal habeas petition. (*Estelle v. McGuire* (1991) 502 U.S. 62, 71-72.)

instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

We also agree with the Attorney General that in this case, "the taking and driving of the rental car were so inextricably intertwined it was not possible that the jurors would have convicted [defendant] of driving the vehicle without also having taken it." Given the nature of the evidence, the arguments, and the overall instructions to the jury, we conclude that the jury could not have convicted defendant of violating Vehicle Code section 10851 by either potential act without also finding that defendant had the intent to temporarily or permanently deprive Budget of possession or ownership of the vehicle at the time those acts were committed. Therefore, any error was harmless beyond a reasonable doubt.

## III.

### IF THE FAILURE TO INSTRUCT THE JURY ON MISTAKE OF FACT WAS ERROR, IT WAS HARMLESS ERROR

Defendant argues that her conviction should be reversed because of the lack of a jury instruction on mistake of fact.[6]

Initially, the Attorney General argues that this issue has been forfeited, as defendant's trial counsel did not request such an instruction. The trial court does not

---

[6] CALCRIM No. 3406 provides the standard instruction for mistake of fact: "The defendant is not guilty of <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact. [¶] If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit <insert crime[s]>. [¶] If you find that the defendant believed that <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for <insert crime[s]>. [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes)." (CALCRIM No. 3406.)

have a sua sponte duty to instruct on mistake of fact in the absence of a request from defense counsel. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 117-118; see *People v. Cavarrubias* (2016) 1 Cal.5th 838, 874.) Defendant contends that her trial counsel's failure to request a mistake of fact instruction constitutes ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 688, 690-691.)

The failure to instruct the jury on an appropriate pinpoint instruction on the defense's theory of the case is reviewed for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Earp* (1999) 20 Cal.4th 826, 887.)[7] The denial of a pinpoint instruction is harmless under *People v. Watson* where the instructions that were given do not preclude findings consistent with the proposed pinpoint instruction's theory and where the defense counsel fully argued the point to the jury. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144.)

Defendant does not argue that the instructions given prevented the jury from finding that she had made a mistake of fact, or that her trial counsel did not argue the issue of mistake of fact to the jury. Instead, she argues that "there was substantial evidence to support a finding that [defendant] retained possession of the vehicle due to her mistaken belief that she was entitled to do so." She also incorporates her arguments to the previous two issues.

We agree with the Attorney General's argument that the jury would have convicted defendant even if a mistake of fact instruction had been given because the jury's verdict indicates it rejected defendant's defense that she was not guilty as she did not have the intent to temporarily or permanently deprive Budget of the car.

---

[7] Defendant acknowledges that case law provides that the harmless error standard in this case is that set by *People v. Watson*, but she requests that this court instead apply the standard of *Chapman v. California* (1967) 386 U.S. 18. We reject that request.

10

## IV.

### DEFENDANT'S PROBATION TERM MUST BE REDUCED PURSUANT TO AMENDMENTS TO PENAL CODE SECTION 1203.1

At the time defendant was sentenced, Penal Code section 1203.1, subdivision (a) provided that the trial court could impose a felony probation term "for a period of time not exceeding the maximum possible term of the sentence." Effective January 1, 2021, that statute was amended to provide that, in most cases, a felony probation term may not exceed two years. (Pen. Code, § 1203.1, subd. (a); Stats. 2020, ch. 328, § 2.) Defendant argues, and the Attorney General concedes, that defendant's term of probation must be reduced.

In *People v. Sims* (2021) 59 Cal.App.5th 943, 964, the appellate court concluded that the amendment to Penal Code section 1203.1, subdivision (a) must be applied retroactively. (See *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885; see also *In re Estrada* (1965) 63 Cal.2d 740.)

Defendant requests that this court reduce her probation term from three years to two years. The Attorney General contends that remanding the matter to the trial court will be "beneficial to the probationer and the public." Doing so, he argues, will allow the trial court to "adjust, modify, or strike probation terms, so that they can be complied with before termination of probation or removed from consideration of whether the probation terminated successfully." In turn, a remand will ensure that the probationer will be eligible to obtain relief under Penal Code section 1203.4, subdivision (a) for expungement of the record based on successful completion of probation. Defendant does not address the Attorney General's argument in her reply brief.

We agree with the Attorney General, and remand the matter to the trial court to reduce defendant's probation term while providing the appropriate relief to defendant.

11

## V.

### THE LAB FEE IMPOSED BY THE MINUTE ORDER MUST BE STRICKEN; DEFENDANT'S ADDITIONAL CHALLENGES TO THE PROBATION CONDITIONS SHOULD BE CONSIDERED ON REMAND

The minute order from the sentencing hearing includes two items not included in the trial court's oral pronouncement of the sentence: a $50 lab fee pursuant to Health and Safety Code section 11372.5, and a probation condition that defendant "not associate with persons known to [her] to be parolees, on post-release community supervision, convicted felons, users or sellers of illegal drugs, or otherwise disapproved of by probation or mandatory supervision."

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

The Attorney General agrees the lab fee must be stricken because defendant did not commit one of the enumerated offenses in Health and Safety Code section 11372.5, subdivision (a).

As to the challenged probation term, although the trial court did not orally pronounce the specific words included above, the trial court did state that defendant was "not to associate with person[]s disapproved of by your probation officer" and "not to associate with anybody known to you to be an illegal narcotic or drug user or seller, and stay away from places where users or sellers congregate." Therefore, part of the challenged probation condition *was* orally pronounced by the court.

On remand, the trial court may clarify the extent of this probation condition and defendant's compliance with it.

12

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court for resentencing in accordance with this opinion. In all other respects, the judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.